UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. SCOTT, | ) | Case No. 1:03 CV 0102 |
| | ) | |
| Petitioner, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| GORDON A. LANE, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

John W. Scott (hereinafter "Scott) was indicted in the Richland County Court of Common Pleas on five counts of sexual battery involving his daughter and covering a period from 1992 through 1995.  He moved to suppress admissions made at the office of his probation officer, but the motion was denied.  His case was tried before a jury which convicted him on all counts (See Respondent's Exhibits 1-7).  Upon conviction, Scott became a prisoner in state custody serving a sentence of incarceration for 15 to 50 years.  As originally sentenced on March 29, 1996, he was not given sexual predator status.

Scott, represented by counsel,  filed a timely appeal challenging only the state magistrate's authority to determine the pre-trial suppression motion.  (Respondent's Exhibits 9, 22).  On March 5, 1997, Ohio's Fifth District Court of Appeals overruled Scott's sole assignment of error and affirmed the trial court's judgment.  (See *State v. Scott*, 1997 WL 117078 (Ohio App. 5 Dist.) (Respondent's Exhibit 12).  No appeal to the Ohio Supreme Court was taken from this decision.

1:03 CV0102                                              2

More than one year later Scott attempted to reopen the appeal upon motion filed September 23, 1998, which motion was quickly denied by the state appellate court on October 19, 1998 (Respondent's Exhibits 14-16).

Gordon A. Lang, Warden (hereinafter "Respondent"), argues the petition should be dismissed without review of its merits due to untimely filing for purposes of 28 U.S.C. §2244(d)(1)(A)'s "1-year period of limitation." [1] It is respondent's position that Scott's petition was untimely because the "1-year period of limitation" had lapsed by September 28, 1998, because the "judgment became final by the conclusion of direct review or by the expiration of time for seeking such review" as calculated commencing April 21, 1997, when the 45-day

---

[1] 28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

1:03 CV0102                                    3

period had elapsed for filing an appeal with the Ohio Supreme Court. See Ohio S.Ct. R. Prac. II §2(A)(1)(a)( 45 days to appeal from journalization of court of appeal's decision ). Scott implicitly concedes  respondent's calculation that he was required to file his petition on or before April 21, 1998, in his arguments for  extension of time under §2244(d)(1)(B) due to an impediment to filing.


However, what is disturbing  in this matter, is that  neither Scott nor respondent dealt with the state's appeal.  See *State v. Scott*, 1999 WL 174061 (Ohio App. 5 Dist.).   The issue raised by  the state in its appeal was whether the recently adopted Megan's Law provision for sexual predator status under Ohio Revised Code Chapter 2950 was applicable to Scott.  As enacted, there were specific provisions applicable to offenders commencing with July 1, 1997, the act's effective date, but also caught within its sweep were pre-July 1, 1997 offenses and convictions.  At the institution where Scott was incarcerated he was classified as a sexual predator.  Scott  returned to the trial court to challenge the constitutionality of this addition to his sentence, and on August 19, 1997, the trial court issued a judgment entry finding Ohio's Megan's Law unconstitutional as to Scott on *ex post facto* and retroactive grounds.  *Id.*  The state appealed and the state appellate court applied *stare decisis* from the Ohio Supreme Court decision in *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), which found that Ohio Revised Code §2950.09(B)  applied to  conduct prior to the effective date of the statute, and did not violate the retroactivity clause of the Ohio Constitution nor the *ex post facto* clause of the United States Constitution.  The state prevailed on its appeal by virtue of the state appellate court's February 22, 1999 decision.  The judgment of the trial court was reversed and remanded

1:03 CV0102                                         4

for further proceedings consistent with that opinion.  Subsequently, the sexual predator status and registration requirements were added to Scott's sentence.

Both sides ignore the issue of whether the state's appeal extended the onset of the "1-year period" of 28 U.S.C. §2244(d)(1)(A) into 1999.  Analysis of this issue requires the court to first look to the plain language of the statute, (§2244(d)(1)(A), and when unambiguous, resort to legislative history and policy consideration is improper.  *Cowherd v. Million*, 380 F.3d 909, 913 (6th Cir. 2004) (*en banc*).  Congress selected the wording, "the date on which the judgment became final" and its choice of the word "judgment" over the more restrictive alternative word "conviction," is significant.  The concept of "final judgment" arose in the question of retroactivity to pending appeals in situations where there had been an intervening change in law as set out by the Supreme Court.  *E.g. Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Caspari v. Bohlen*, 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).  Initially, finality encompassed merely "a judgment of *conviction.*"  *Griffith*, 479 U.S. at 321 n. 6; *U.S. v. Johnson*, 457 U.S. 537, 542 n. 8, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).  The rule evolved so that the district court could not grant a writ of habeas corpus on an intervening change of law when  the conviction and sentence became final prior to the Supreme Court's pronouncement of a new rule of law. *Caspari*, 510 U.S. at 390-91.

Parallel to defining what constitutes a final conviction, the Supreme Court stated that criminal sentences apart from convictions did not "have the qualities of constitutional finality

1:03 CV0102                                    5

that attend to an acquittal." *U.S. v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66

L.Ed.2d 328 (1980); *Caspari*, 510 U.S. at 391. Thus in *DiFrancesco*, former federal statute,

18 U.S.C. §3576, which permitted the government to appeal a federal sentence under specified

conditions where the government believed that the sentence was too lenient, was constitutional.

*Id.*, 449 U.S. at 139-41. The court read 18 U.S.C. §3576 "as establishing at most a two-stage

sentencing procedure." *Id.*, 449 U.S. at 140 n. 16.


        Later these two lines of reasoning blended. The Supreme Court in *Stringer v. Black*, 503

U.S. 222, 112 S.Ct. 1130, 117 L.Ed. 367 (1992), began its discussion of finality stating,

"Subsequent to two exceptions, a case decided after a petitioner's conviction *and sentence*

became final may not be the predicate for federal habeas corpus relief unless the decision was

dictated by precedent existing when the judgment in question became final (emphasis

supplied)." *Stringer*, 503 U.S. at 227. This led to the statement in *Caspari* that:

> In determining whether a state prisoner is entitled to habeas relief, a
> federal court should apply *Teague* by proceeding in three steps. First,
> the court must ascertain the date on which the defendant's conviction
> and sentence became final for *Teague* purposes. . . .

*Id.*, 510 U.S. at 390.

Thus the term judgment, as used in §2244(d)(1)(A) in connection with finality, encompasses

both a judgment of conviction and the judgment of sentence. The "1-year period of limitation"

imposed under §2244(d)(1)(A) was enacted as part of the April 24, 1996 Antiterrorism and

Effective Death Penalty Act which added this time limitation to the existing habeas corpus

governing statutes. At the time of enactment final judgment was understood to include both

conviction and sentence. If the state's appeal of sentence is "direct review" this resets the "1-

1:03 CV0102                                      6

year period" to be calculated beginning with the date February 22,1999.  For the statute is clear that "judgment" must be "final by conclusion of *direct review* or expiration of time for seeking *such* review, (emphasis supplied)."

The undersigned has uncovered no precedent to answer the question whether the state's appeal of sentence is direct review as to "State post-conviction review or collateral review "for purposes of §2244(d)(2).  The term direct review is undefined and it has been difficult to develop, as evidenced by the evolution of the determination whether an application to reopen appeal pursuant to Ohio App. R. §26(B) is a direct appeal.  Categorizing this form of appeal has proved to be immensely difficult  from the time the issue  arose in *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), through *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (*en banc*).  See *Lopez*, 426 F.3d at 343-50  (overruling *White* by holding that an application to reopen appeal due to appellate counsel's ineffectiveness is *not* part of the direct appeal).

In *Lopez*, the panel approvingly cited out of the rationale from *Lambert v. Warden*, *Ross Correctional Institution*, 2003 WL 2271466 at *8 (6th Cir. Sept. 2, 2003) regarding the distinction between direct and collateral review explaining:

>    Direct review immediately follows trial, generally is constrained by tight, non-waivable time limits, and concludes with finality of judgment. Collateral review focuses [o]n the adequacy of the trial and direct review, rather than the underlying merits of the original action.  As such it necessarily follows direct review.  While some types of collateral review have time limits, these limits are generally looser and waivable for good cause.  Also while there is, with few exceptions, only one direct review process of a trial court verdict, there often can be multiple courses of collateral review.

1:03 CV0102                                  7

*Lopez*, 426 F.3d at 351.

Applying this distinction to Ohio's procedures tends to categorize the state's appeal of sentence as direct review.  Ohio allows the state to appeal an incorrect sentence under Ohio Revised Code §2945.67(A) and §2953.08.  See *State v. Howell*, 5 Ohio App.3d 92, 449 N.E.2d 523 (1981) (state has right to appeal to correct an improper sentence); *State ex rel. Cleveland v. Calandra*, 62 Ohio St.2d 121, 403 N.E.2d 989, 16 Ohio Op.3d 143 (1980) (prosecutor may seek leave to appeal by failure to impose a mandatory term of imprisonment).  The primary statute (§2945.67) contains two tiers, one for appeal of right, limited to decisions granting a motion to dismiss all or any part of indictment, complaint or information, suppressing evidence or returning seized property, or granting post-conviction relief. The second tier permits the state's appeal of sentence, but only by leave of the state appellate court.  Further, in this second tier, the appeal is limited exclusively to the sentence, and not the "underlying merits of the original action." See Ohio Rev. Code §29245.67(A).  Thus this procedure cannot serve to undo an acquittal or otherwise erode finality of judgment of conviction.   The traits of this  appeal show it  is more than a mere review of the adequacy of the trial proceedings, and is a counterpart  to defendant's right to appeal an unfavorable sentence as exists under the direct appeal provision of Ohio App. R. 4.  The defendant is further entitled to representation by counsel.  See Ohio Rev. Code §2945.67(B), and the state's appeal is governed by the same 30-day time limitation.  See *State v. Gowdy*, 95 Ohio App.3d 628, 643 N.E.2d 175 (1994).  Thus the state's appeal of sentence shares traits of a direct appeal.

1:03 CV0102                                                          8

Distinguishing direct and collateral review along constitutional lines favors categorizing the state's appeal as direct review.  The general rule is that "States . . . must provide review of both convictions *and sentences* in death cases (emphasis added)" only.  *Whitmore v. Arkansas*, 495 U.S. 149, 171, 110 S.Ct. 1717, 109 L.Ed.2d 125 (1990).  It is well established that while the state is not required to provide appellate review in non-capital matters, but when it does, so it must muster up to constitutional requirements for defendant.  See *Halbert v. Michigan*, - U.S. -, 125 S.Ct. 2582, 2586, - 87, 162 L.Ed.2d 552 (2005); *Ross v. Moffit*, 417 U.S. 600, 611, 911 S.Ct. 2437, 481 L.Ed.2d 341 (1974); *McKane v. Durston*, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894).  The constitutional requirement that a defendant must have assistance of counsel in the state proceeding, though, is an indicator that it is direct review. See *Lopez*, 426 F.3d at 352 (no federal constitutional right to counsel in collateral or post-conviction review). Moreover, the fact that Ohio has made the state's appeal of sentence discretionary, alone, cannot serve as the turning point for distinguishing direct from collateral review in light of *Halbert*'s holding that a defendant is entitled to due process and equal protection, including appointment of counsel, in Michigan's discretionary plea appeal process.

To summarize, §2244(d)(1)(A) speaks of judgment rather than the narrower term conviction, and the term judgment must be read to include judgment of sentence.  The state's appeal of sentence under Ohio Rev. Code §2945.67 and §2953.08 shares many of the traits of a direct appeal, and is a counterpart of defendant's appeal of sentence.  And finally, under a constitutional light, the discretionary nature of the state's appeal of sentence is not a distinguishing or identifying factor for determining when the right of counsel exists. As *Lopez*

1:03 CV0102                                          9

illustrates, the right to counsel is associated with direct, but not collateral review, and Ohio has explicitly included the defendant's right to counsel when the state appeals the sentence.  (See Ohio Rev. Code §2945.67(B)).  Accordingly, it is presumed that the state's appeal of Scott's sentence was direct review for purposes of §2244(d)(1)(A).  Accordingly, the "1-year period of limitation" is computed to initiate 45 days after February 22, 1999, which calculates to April 8, 1999 (the last day Scott could have appealed the unfavorable state appellate decision).

"Direct review delays the start of the statute of limitations.  Collateral review merely tolls its running."  *Lopez*, 426 F.3d at 346 quoting *Lambert*, 2003 WL 22071466 at *3. Pursuant to *Lopez*, it is clear that Scott's Ohio App. R. 26(B) proceedings were a form of collateral or post-conviction review that tolled the running of the statute.  The period of limitation began to run on April 11, 1999.  Near that time, on April 15, 1999, Scott filed a motion to amend his September 23, 1998 application to reopen his direct appeal due to counsel's ineffectiveness. (See Respondent's Exhibits 16-17). The September 23, 1998 application to reopen direct appeal, though, had been denied on October 19, 1998 (Respondent's Exhibit 16).  The State had argued that Scott had failed to apply for reconsideration within ten days as provided under Ohio App. R. 26(A) and that the motion to amend was not a remedy provided by law.  That was correct.  The application to reopen had been denied several months earlier, so Scott could not then amend it. Consequently, the April 15, 1999 motion to amend was not "properly filed" for purposes of §2244(d)(2) and did not toll running of the statute until its May 3, 1999 denial (See Respondent's Exhibit 20).

1:03 CV0102                                     10

Counting the time from April 8, 1999, Scott was required to either file his habeas petition on or before April 10, 2000 (allowing for the weekend) or to initiate some form of "properly filed" state post-conviction or collateral review for tolling.  Scott, however, did not initiate any additional proceedings until August 10, 2000 with his second application to reopen direct appeal.  (Respondent's Exhibit 21).  This application was granted and the state appellate court did review Scott's new assignments of error.  See *State v. Scott*, 146 Ohio App.3d 233, 765 N.E.2d 930 (2001).  However, by the time Scott's second Ohio App. R. 26(B) application was filed, sixteen months had lapsed.  Consequently, the federal habeas corpus petition must be dismissed under §2244(d)(1)(A) as untimely filed. The direct review of Scott's sentence pursuant to the state's appeal did not save Scott's federal petition from Scott's delay.


*Impediment to Filing:*

Scott concedes that §2244(d)(1)(A)'s "1-year period of limitation" had expired, but counters that the period of limitation commenced on "the date on which the impediment to filing an application created by State action in violation of the Constitution...is removed, if the applicant was prevented from filing by such state action" as provided under §2244(d)(1)(B). Scott argues that the original court-appointed attorney and the absence of necessary documents from the original appellate record were impediments to his filing a petition for writ of habeas corpus for purposes of exception under §2244(d)(1)(B).  Scott maintains these impediments were removed when new counsel was appointed upon the second application to reopen appeal, which allowed Scott to diligently proceed through the court of appeals to the Ohio Supreme Court.

1:03 CV0102                                    11

Impediment to filing must be created by state action, and state action includes deficient

performance by defense counsel.  See *Winkfield v. Bagley*, 66 Fed. Appx. 578, 582 (6th Cir. May

28, 2003), *cert. denied*, 540 US. 969 (2003); *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct.

2639, 91 L.Ed.2d 397 (1986).    The state appellate court did not expressly find deficient

performance, but such a finding is implicit in the court's acknowledgment of defense counsel's

omissions.  See *State v. Scott*, 146 Ohio App.3d 233, 765 N.E.2d 930 (2001).  Instead, the state

court skipped ahead to the second "prejudice prong" of *Strickland v. Washington*, 466 U.S. 668

(1984), and found Scott had not been prejudiced by counsel's shortcomings.  *Id.*


Scott, though, misinterprets "impediment to filing," because counsel's deficiency on

direct appeal did not cause him to miss a deadline.  An impediment must "prevent" filing.  A

timely appeal had been filed.  "Section 2244(d)(1)(B) requires a causal relationship between

the unconstitutional state action and being prevented from filing the petition."   *Dunker v.*

*Bissonnette*, 154 F.Supp.2d 95, 105 (D. Mass. 2001); *Winkfield*, 66 Fed. Appx. at 583.

Appellate counsel's omission on appeal did not prevent earlier filing of a petition.  It just so

happened that Scott, and later newly appointed appellate counsel, thought of new issues which

Scott presented in his  applications to reopen appeal.


However, Scott's next argument concerning the lack of counsel during his initial Ohio

App. 26(B) proceedings has proved to be more problematic. If counsel were required, then it

follows that lack of counsel would be deemed to be state action for this deprivation.  However,

there can be no state action due to deficient performance by counsel, where counsel was not

1:03 CV0102                                    12

required in the first place.  See *Coleman v. Thompson*, 501 U.S. 722, 756, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539

(1987); *Ross*, 417 U.S. at 610-18; *Halbert*, 125 S.Ct. at 2586-88; *Lopez*, 426 F.3d at 350.  Hence

Scott's failure to appeal to the Ohio Supreme Court from the appellate decision on direct appeal

cannot be deemed to be an impediment.


However, until recently, there was no firmly settled position in the Sixth Circuit as to

whether applications to reopen appeal under Ohio App. R. 26(B) were a continuation of the

direct appeal process.  The Sixth Circuit recently determined in *Lopez,* that there is no federal

constitutional right to the assistance of counsel in Ohio App. R. 26(B) proceedings to reopen

appeals.  *Lopez*, 426 F.3d at 352.  ". . . Ohio's Rule 26(B) procedure is a collateral post-

conviction remedy and not a direct appeal.  Thus, the state of Ohio is not required to provide

appointed counsel."  *Lopez* at 353; and see *Finley*, 481 U.S. at 555.  Accordingly, the lack of

counsel in the 26(B) applications to reopen appeal was not due to "State action," and

consequently did not create an impediment to timely filing  Scott's petition for federal habeas

corpus.


*Equitable Tolling:*

Respondent adds that he believes that Scott is raising an argument for equitable tolling

from the date the "1-year period of limitation" began to run on April 27, 1997 through August

10, 2000, the date Scott filed his second application to reopen his direct appeal due to

1:03 CV0102                                    13

ineffective assistance of appellate counsel. Equitable tolling requires the Court to consider

several factors in assessing the reasonableness of a petitioner's ignorance of the requirement

of timely filing. See *Dunlap v. U.S.*, 250 F.3d 1001, 1008 (6th Cir. 2001), *cert. denied*, 534 U.S.

1057 (92001); *Vroman v. Brigano*, 346 F.3d 598, 604-05 (6th Cir. 2003); *Allen v. Yukins*, 366

F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004). "[T]he doctrine of equitable

tolling allows a federal court to toll a statute of limitations when, 'a litigant's failure to meet a

legally-motivated deadline unavoidably arose from circumstances beyond that litigant's

control.'" *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005), quoting *Graham-Humphreys

v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).[2] Scott, though,

bears the burden of establishing entitlement. See *Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir.

2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *Keenan*, 400 F.3d at 420.


Scott has not shown: that he was unaware of §2244(d)'s limitation period; that his

ignorance of the legal requirement to file his claim was reasonable; or that he was diligent in

allowing 16 months to lapse. See *Dixon v. Ohio*, 81 Fed. Appx. 851 (6th Cir. 2003) (petitioner's

lack of counsel and 1 month placement in solitary confinement did not excuse lack of diligence

in pursuing his claims); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), *cert. denied*, 538

U.S. 984 (2003) (inmate's lack of legal training, poor education and even illiteracy does not

---

[2] In determining whether to allow equitable tolling, the Court must consider the *Andrews* factors: petitioner's lack of notice of the filing requirement; petitioner's lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the Respondent and the petitioner's reasonableness in remaining ignorant of the legal requirements for filing his claim. *Dunlap*, 250 F.3d at 1008. However, "this list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d at 605; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004).

1:03 CV0102                                   14

provide reason to toll the statute of limitations). Consequently, his claims do not excuse this untimely petition.

Although respondent has not been prejudiced by Scott's delay, "Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Vroman*, 346 F.3d at 605; *Allen*, 366 F.3d at 404.  Given that Scott has not established any factor that might justify tolling, lack of prejudice is not a consideration.

Finally, however, there is the question of whether Scott is an innocent.  The Sixth Circuit has determined in *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), as an issue of first impression, that a credible claim of actual innocence will equitably toll the §2244(d) limitations period. *Id.*, at 508-596.   None of Scott's arguments, however, demonstrate actual innocence.   Actual innocence means "factual innocence not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  Scott has not produced new evidence of innocence that was not presented at trial.  See *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Accordingly, Scott is not entitled to equitable tolling to excuse untimely filing.

1:03 CV0102                                        15

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons,  this petition filed under 28 U.S.C. §2254 should be dismissed

due to untimeliness pursuant to 28 U.S.C. §2244(d).


                                                    s/James S. Gallas
                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk

of Court within ten (10) days of mailing of this notice.  Failure to file objections within the

specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S.

v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985).


January 25, 2006